*In re* CUSTODY OF PAUL SWITALLA *et al.*—(VERA SWITALLA, Petitioner-Appellee, *v.* JAMES ROBERT SWITALLA, Respondent-Appellant.)

Third District   No. 80-53

Opinion filed August 7, 1980.

Bisbee & Nagan, of Macomb, for appellant.

James E. McPeak, of Henderson & McPeak, of Macomb, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

James Robert Switalla appeals from a judgment of the Circuit Court of McDonough County awarding custody of his three sons to their mother, Vera Switalla, upon the dissolution of the marriage of Mr. and Mrs. Switalla. Mr. Switalla's sole contention on appeal is that the court awarded custody to the mother of the children based upon the so-called "tender years doctrine," in contravention of Illinois case law and the State and Federal constitutions, and thus failed to follow the statutory mandate of our Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 101 *et seq.*) that a court determine custody in accordance with the best interest of the child, considering all relevant factors, including those set out in section 602(a) of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)).

James and Vera Switalla were married for 13 years. They have three sons, Paul, aged 9 at the time of the judgment at issue, Scott, aged 7, and Craig, aged 6. The couple spent the first half of their married life in Chicago and the second half in Bushnell, where they operated a motel. According to Mrs. Switalla, marital discord developed over Mr. Switalla's employment at two jobs and his resulting inability to spend sufficient time with the family. They attempted to remedy the situation by moving to Bushnell and operating a family business, the MRK motel, at which they resided. Mr. Switalla operated the motel, completed his college education, and took a second job as a feed salesman. Mrs. Switalla began her college education and helped in the operation of the motel. Mrs. Switalla filed a petition for dissolution of marriage on the grounds of mental cruelty. She complained that Mr. Switalla was uncommunicative, rigid, and domineering. Mr. Switalla contested the complaint, maintaining that the source of their marital troubles was Mrs. Switalla's newly found intellectual interests. He did not counterpetition, apparently believing the marriage could be saved.

After a lengthy hearing, grounds for dissolution were found to exist on May 3, 1979. Temporary custody of the three children was vested in Mrs. Switalla. At that time the court stated:

"* * * I am well aware that we don't in Illinois have a so-called tender years doctrine, what at one time, as I understood it,

presumed the children of tender years should be placed in the custody of their mother unless there is some strong showing to the contrary, but I do feel, as a temporary basis, the best interest of these children require that they be placed temporarily in the custody of their mother, who, as I have indicated, will be given possession, under the statute I previously referred to, of the residence premises at the MRK Motel."

In arriving at this temporary judgment, the court considered the wishes of the parents, the wishes of the children (who expressed no preference), the "interrelationship of the children and their parents with each other," and the fact that, by remaining at the motel, the children would enjoy a continuity of environment.

Until the final order was delivered, Mr. Switalla continued to reside at the motel, in a guest room near, but not within, the family residence. He visited with the children daily.

Prior to the final hearing, counsel was appointed to represent the children. At the final hearing, on September 19, 1979, the children's only witness was Dr. Mona Johnston, a psychologist, who testified hypothetically. She stated that children, when placed under the stress of their parents' marital breakup, tend to grow more emotionally dependent upon one another. She also stated that, upon a marital breakup, children should be placed with the "psychological parent." The court questioned Dr. Johnston about the concept of "bonding" between the parent and child, which she referred to in her testimony. In response to questioning by the court, Dr. Johnston stated that this bonding occurred within a few weeks of birth. The court asked if that meant, given "the way we live today," that bonding "normally" occurred between the child and its mother. Dr. Johnston replied by stating that, in a cohesive household, the children get bonded to both parents.

The court stated that it had heard, from other experts, that the male role model became important to a child after about the age of 10 to 12, but prior to that time, the female influence was more important. The court added that it did not know this view to be correct, but that it had heard it stated. Dr. Johnston replied that this was an incomplete piece of information; that both parents have much to contribute to the child at all phases of its development. The court then asked if, all other facts being neutral, the masculinity or femininity of a parent was an important factor in determining the better custodian. Dr. Johnston replied only that the psychological parent is the proper one to receive custody. The appellant argues that the court demonstrated, through this questioning, its predisposition to award children of tender years to their mother. We do not conclude this colloquy demonstrated any inflexible presumption. The court did not badger the witness and seemed open to her statements. The

court was, indeed, looking for an answer to its question, and simply stated the view it had heard from other experts. However, the court also stated that it did not know this view to be correct and appeared open to the testimony of Dr. Johnston. It should be noted that Dr. Johnston at no time testified about the actual psychic state of the Switalla household. It is apparent that her answers were strictly hypothetical and that she had no first-hand knowledge of any of the children or either of the parents. She offered no opinion as to who the "psychological parent" was in this case. Nor did her testimony discredit the possibility that there might be two psychological parents in this case.

After this hearing, the court awarded permanent custody of the three children to Mrs. Switalla. The court found that Mr. and Mrs. Switalla were both not only fit, but exemplary parents.

The appellant, Mr. Switalla, calls attention to the following remark by the court in its address from the bench:

> "Illinois does not strictly and religiously adhere to what sometimes is referred to as the doctrine whereby the mother is presumed to be the ideal parent for minor children. However, the Courts of Illinois do, and in many cases have, including some fairly recent cases, acknowledge the fact that generally where there are children of tender years, and I refer to the so-called tender years doctrine, the mother normally is in a better position to provide the needs of those children due to their tender years. Not that she is per se a better parent at all times and places, and I think we noted from the testimony in the instant case that teachers in school customarily contact the mother about school work, that the mother was normally the one that came to school for school conferences, and whether we like it or not there are certain things in this world, and I wouldn't purport to say that they are inherited traits, let's say that they are simply the roles that people have historically played, but there are certain areas, and the evidence in this case shows it, where the mother is more directly and expressly involved and other areas where the father contributes more. But I think in view of the tender years of these children, I am going to say that clearly because that is primarily what I am resting my decision on, I feel that the custody should be placed with their mother."

When asked by Mr. Switalla's counsel for further clarification of the basis for its decision, the court replied:

> "I will tell you quite frankly the strongest consideration in this case to me, as I tried to indicate, is what sometimes is referred to as the tender years doctrine. I don't apply it arbitrarily; I realize that in a given situation a father might supply the needs of the so-called tender years consideration better than a mother. I am not arbitrary

about it but I think particularly here the evidence of the case I simply feel that with children this age that both parents have a great deal to contribute. I feel that the mother, and particularly what I have heard of the evidence, is in a more sensitive position at this particular age and, as I indicated, that probably is the strongest consideration that influenced my decision, and if these three boys were three or four years older I might feel differently."

Mr. Switalla argues that the court based its decision on the so-called "tender years doctrine," and by so doing, contravened Illinois statutory and decisional law, the Illinois Constitution and the United States Constitution.

Mr. Switalla argues that the listing of factors in section 602(a) of our Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602(a)), which the court is to consider in the determination of child custody, precludes consideration by the court of factors not listed therein. Specifically, he argues that the court may not consider the age or sex of the child nor the sex of the parent. This is clearly a misreading of the statute. The statute says that the court shall consider *all* relevant factors, including the factors enumerated therein. There is nothing in the statute which precludes the consideration of other factors, and the age and sex of the children and sex of the parent have frequently been considered in custody awards. (See, *e.g.*, *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 625, 402 N.E.2d 831.) In fact, Mr. Switalla's own testimony at trial was that the boys could benefit from a male role model. The relevancy of these factors will vary from case to case, and, under the statute, they may be considered where relevant.

Mr. Switalla next argues that the decisional law of our State has discredited the so-called "tender years doctrine," and that this doctrine is contrary to the equal protection clauses of both the Illinois and Federal constitutions. For many years, the chancery courts of this State had subscribed to the view that "the best interest of the child must be primarily consulted. It is upon this consideration that an infant of tender years is generally left with the mother (if no objection to her is shown to exist,) even when the father is without blame, merely because of his inability to bestow upon it that tender care which nature requires, and which it is the peculiar province of a mother to supply." (*Miner v. Miner* (1849), 11 Ill. 43.) "Therefore, compelling evidence must be presented, proving the mother to be an unfit person, to cause the custody of her minor daughter to be denied her, or there must be a positive showing that to deny custody to the mother would be for the best interests of the child." *Nye v. Nye* (1952), 411 Ill. 408, 414, 105 N.E.2d 300.

We note, however, that the *Nye* decision arose, not from an original custody decree upon divorce, but from a petition by the father to modify

the original divorce decree so as to vest him with exclusive custody of the child. In such a situation today, the petitioning parent must still come forth with evidence that a change has occurred in the circumstances of the child or his custodian such that modification is necessary to serve the best interest of the child. Even then, the court shall retain the custodian appointed pursuant to the prior judgment unless the custodian agrees to the modification, the child has been integrated into the family of the petitioner with consent of the custodian, or the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him. Ill. Rev. Stat. 1979, ch. 40, par. 610.

■■ Recent attempts to persuade the appellate courts to reverse custodial awards to fathers, by mothers who invoke the language in *Nye* quoted above, have uniformly failed. It is clear that "there is no rule in Illinois that unless she is shown to be unfit, custody should be given to the mother. [Citation.] Furthermore, our 1970 Illinois Constitution provides that equal protection of the law shall not be denied or abridged because of sex. (Ill. Const. (1970), art. 1, sec. 18.)" *Anagnostopoulos v. Anagnostopoulos* (1974), 22 Ill. App. 3d 479, 482, 317 N.E.2d 681; *King v. Vancil* (1975), 34 Ill. App. 3d 831, 836, 341 N.E.2d 65; *Carlson v. Carlson* (1967), 80 Ill. App. 2d 251, 255, 225 N.E.2d 130; accord, *Randolph v. Dean* (1975), 27 Ill. App. 3d 913, 917, 327 N.E.2d 473.) "There is no longer a presumption in favor of the mother" in a contest for custody of children of tender years. (*Strand v. Strand* (1976), 41 Ill. App. 3d 651, 657, 355 N.E.2d 47; *Drake v. Hohimer* (1976), 35 Ill. App. 3d 529, 530, 341 N.E.2d 399; *People ex rel. Irby v. Dubois* (1976), 41 Ill. App. 3d 609, 612-13, 354 N.E.2d 562.) The rule is well established, and the fourteenth amendment of the United States Constitution adds nothing to it.

The so-called "tender years" presumption, which the above-cited cases have so clearly condemned, is, as stated by a New York court, "a blanket judicial finding of fact, a statement by a court that, until proven otherwise by the weight of substantial evidence, mothers are always better suited to care for young children than fathers." (*State ex rel. Watts v. Watts* (Fam. Ct., N.Y.C., 1973), 77 Misc. 2d 178, 350 N.Y.S.2d 285.) This presumption has been commonly referred to as the "tender years doctrine."

Despite the appellant's assertion, the record does not demonstrate that the trial court exercised such a presumption in deciding this case. The court repeatedly stated that it was making no arbitrary presumption, but was basing its judgment on the evidence before it. The court did, indeed, state that it was, in determining the best interests of the children based upon the evidence of the present case, considering the age of the children. However, the use of the term "tender years" does not necessarily indicate

that the court was engaging in the presumption, contrary to law, that the mother *is* the proper custodian *unless she is proven unfit.* In this case, although the same term was referred to, no such presumption was used by the court as a mandatory requirement. At common law, the father had a right to the custody of his child which was nearly absolute. (H. Clark, Domestic Relations §17.4(a), at 584 (1968).) The "tender years doctrine" grew out of the chancellor's perception of the actualities of family life. As stated in *Miner v. Miner* (1849), 11 Ill. 43, the doctrine was invoked in order to serve the best interest of the child. Perhaps it was observed by the chancellor (or was the conventional wisdom of the day) that mothers typically played a more active role in the rearing of their very young offspring than did fathers.

A finding that a particular mother displayed this characteristic would not be objectionable. The objectionable aspect of the "tender years doctrine" is that it presumes this in all cases. As a presumption, it improperly places upon fathers a burden of persuasion not imposed upon mothers. However, the mere congruence of facts between the case at bar and the "typical" family situation which may have given rise to the formulation of the "tender years doctrine" does not make the findings of the court in this case suspect.

The court stated, in its order from the bench:

> "I don't wish to speculate that were these boys three, four, five years older a different result might well obtain, but I think at this particular time in their lives, and from the evidence I have heard, it is in their best interest that their custody be placed with their mother, for the reasons I have indicated and for the further reason I think what the mother can contribute to the welfare of these boys is something she can only contribute if she is a full-time custodian. I don't think she can do it on a visitation basis. The father, on the other hand, has a great deal to contribute—but I do think to some extent, to a great extent hopefully, what he does contribute to these boys can to a large extent be given with generous visitation and would not require him to be the full-time custodian."

The court reached this conclusion based upon several findings of fact. It found that the mother had had primary responsibility over the children's school work, speech therapy (all of the children had speech impediments which have been successfully treated), cultural development (she played word games with the children and enrolled them in music lessons), and medical treatment (one of the children is being treated for partial hearing loss). The father took the children on outings, played sports with them, and took them to church. He is very active in community affairs which have indirectly benefited the children.

The appellant makes no contention that these findings are contrary to

the weight of the evidence. These findings support the conclusion of the court that the mother could continue to perform her valuable services toward the children only if she had their custody on a continuous basis, whereas the father could contribute to their development, as he has so far, through liberal visitation. The court granted the father visitation every other weekend, every other holiday, and six weeks during the summer.

■■ A decision of the trial court regarding custody will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence or unless it appears that manifest injustice has been done. The presumption favoring the result reached by the trial court is strong and compelling in custody cases because the trial court, rather than the reviewing court, is in a better position to evaluate the credibility of the witnesses and the needs of the children. (*In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 625, 402 N.E.2d 831.) The findings and conclusions of the court in the case at bar are not contrary to the manifest weight of the evidence.

The appellant argues that the court's invocation of the "tender years doctrine" precluded it from considering the best interests of the children. As evidence for this contention, he notes that Mrs. Switalla was awarded the MRK motel largely because, according to the written findings of the court, "all three minor children are well adjusted to their home, school and community, in particular their home in the residence quarters of the MRK Motel in Bushnell, Illinois, and their school, Bushnell-Prairie City School System." (See Ill. Rev. Stat. 1979, ch. 40, par. 602(a)(4).) Yet, Mrs. Switalla, prior to the divorce, attempted to remove the children to Macomb, and made inquiries regarding the sale of the motel. Therefore, the appellant argues, the court's finding that the children would be best served by a continuity of physical surroundings is only consistent with an award of custody to their father, who was the more active proprietor of the motel. The court, Mr. Switalla argues, only vested custody in the mother because it improperly presumed her greater fitness. As we have indicated, the court has demonstrated no such presumption, but apparently based its custody determination upon the facts before it. Furthermore, Mrs. Switalla testified that she would continue to run the motel were it awarded to her.

■■ The court, in both its written and oral orders, made extensive findings of fact. These findings were based upon the evidence and are supportive of the conclusions reached. These findings were, in all respects, in compliance with the statutory requirements of the Illinois Marriage and Dissolution of Marriage Act. (See Ill. Rev. Stat. 1979, ch. 40, par. 602.) The court found that the custody determination which it arrived at served the best interests of the children. The determination of custody is within the discretion of the trial judge and will not be disturbed on review unless it appears that manifest injustice was done or that the court has abused its

176

discretion. (*Anagnostopoulos v. Anagnostopoulos* (1974), 22 Ill. App. 3d 479, 482, 317 N.E.2d 681.) We conclude that the court did not abuse its discretion in the case at bar, nor was the result manifestly unjust.

For the reasons indicated herein, the judgment of the Circuit Court of McDonough County is, therefore, affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.