*In re* MARRIAGE OF WILLIAM G. BROOKS, Petitioner-Appellant, *v.*
SALLY L. BROOKS, Respondent-Appellee.

Third District    No. 80-217

Opinion filed July 14, 1981.

William N. Stone, of Sterling, for appellant.

Gregory F. Schott, of Pignatelli and Kavadas, of Sterling, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal by the father, William G. Brooks, from an order of the circuit court of Whiteside County awarding custody of the three Brooks children to the mother, Sally L. Brooks, after the father had been granted a dissolution of the parties' 11-year marriage on uncontested grounds of mental cruelty. The children involved are Billy, age 10; Penny, age 8; and Robin, age 7. In addition, the mother has a 13-year-old son Jeff by a previous marriage who formerly lived with the family but who, at the time of the custody hearing, was residing in a mental health facility for treatment of unspecified emotional problems.

After the father filed a petition for dissolution of the marriage, he was awarded temporary custody of the three children. The father worked as a farm laborer, and prior to the separation, the family had resided in a house provided for him as a part of his employment. The father and children continued to reside in the family home near Sterling, Illinois, at the time of the custody hearing. The mother worked at a factory in Dixon, Illinois, where she had, at the time of the hearing, purchased a two-bedroom mobile home.

The evidence at the custody hearing was contradictory. The father testified that the mother had had an affair before the separation, that she often stayed out late, that she had had a drinking problem for two years, that she allowed the house to become and remain filthy, that she always had piles of dirty clothes all over the house, that she always had dirty dishes in the sink, that she did not prepare meals, and that she did not bathe the children or provide clean clothes for them. He introduced into evidence photographs which he said he had taken before the parties separated, showing the dirty condition of the refrigerator, oven, sink, and house in general. The mother denied the father's assertions and testified that she had to work to buy clothes and food for the family, that she did prepare meals and tried to keep the house clean, that the father was messy, that the father rationed the food and would not allow the children to be adequately fed, and that the father turned the heat off in the house on March 1 each year and kept the thermostat turned too low for the rest of the year. She denied that she drank. When she was shown a note dated January 18, 1978, from the school nurse indicating that Penny was not clean and was smelly, the mother explained that during that school year,

she was working a night shift and the father was responsible for getting the children off to school since she did not get home until after they had left. The mother also testified that the father had physically abused her older son Jeff and was mean to their son Billy.

The father subsequently denied striking the children but said that the mother hit them. He also stated that during 1978 she worked second shift and she was the one who got the children off to school most of the time, that she overheated the house, that he bought the kids vegetables and meat while she bought junk food, that he now keeps the house clean and cooks good meals, that her trailer was dirty when he was in it three or four weeks previously, and that the filthy conditions of the family home existed for several years. He also stated that the mother's son Jeff had molested their daughter Penny, and that he had taken Penny to the doctor.

At the conclusion of the evidence, the trial judge announced that he was not satisfied with the evidence, which was so contradictory that he could not determine the truth of the situation. He asked both parties to obtain corroboration, and at a later hearing additional evidence was produced which disclosed that the mother had been working third shift in January of 1978 as she had said; that a doctor had examined Penny for sexual molestation and found no indication of penetration but did find a vaginal irritation; that the principal of the children's school had investigated bruises observed on the mother's son Jeff and that the father admitted striking the boy; that the principal noted that the children were dirty and shabbily dressed before the parties separated; that both homes are now clean; and that the family home was filthy before the separation.

The trial judge interviewed the three girls on two separate occasions. Both times the two girls indicated a preference for living with their father, but they were both reticent and did not give any reason for their preference. The 10-year-old boy was more outspoken. He stated a preference for living with his mother because the father played too rough and struck him without cause.

At the conclusion of the second hearing, the court announced its decision to award custody to the mother and directed the Department of Children and Family Services to make unannounced visits to her home monthly for 12 months to ascertain the state of cleanliness of the home and the children as well as other factors affecting the best interests of the children. The court also directed the Department to provide assistance to the mother and to file a final report with the court, except if any problems are noted, then a report is to be made to the court within seven days. The court filed a memorandum opinion holding that the mother was more credible since the father was impeached upon several material facts. The court observed that the father should have cleaned the home and children

himself instead of merely taking pictures of the filth and that before the separation neither party functioned as a good parent but, after the separation, both have been able to maintain clean homes and, with an end to family battles, the children's work has improved. The court noted that the father was prone to use excessive physical force in dealing with the children. The court determined that the mother deserved a chance to demonstrate her ability to provide proper care for the children on the basis of all the evidence.

■■ Upon appeal, the father contends that the decision of the trial court was an abuse of the court's discretion, was contrary to the manifest weight of the evidence, and was not in the children's best interests. After carefully reviewing the record, we think it sufficient to say that the evidence in the record does support the findings of the trial court. Not only was the father impeached on several points, but there was testimony indicating that he struck the boys with excessive force at times.

Further, upon appeal, the father argues that the evidence of the mother's slothfulness, drinking, and promiscuity should have been given greater weight. It is, of course, the function of the trial court to weigh the evidence, and, considering all of the evidence in this case, we cannot say that the award of custody was contrary to the manifest weight of the evidence.

■■ Great discretion is vested in the trial court in custody cases where the judge has the superior opportunity to evaluate the evidence and determine the best interests of the children. (*Cebrzynski v. Cebrzynski* (1978), 63 Ill. App. 3d 66, 379 N.E.2d 712.) It is clear from the record that the experienced trial judge carefully weighed all the relevant factors in exercising his discretion. We will not disturb the judgment of the trial court. Furthermore, we believe the trial judge is to be commended for insisting upon additional corroborative evidence when confronted with the contradictory testimony of the two parties in this case, where his paramount concern was the best interest of the three children.

For the reasons stated, we affirm.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.