*In re* MARRIAGE OF CATHERINE L. McKEEVER, Plaintiff-Appellant, and NICHOLAS L. McKEEVER, Defendant-Appellee.

Third District   No. 82—735

Opinion filed September 7, 1983.

906

STOUDER, P.J., dissenting.

Glenn J. Church and Don B. Harmening, both of Glenn J. Church, Ltd., of Peoria, for appellant.

Michael A. Fleming, of Peoria, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:
This is an appeal from a permanent child custody award. On September 10, 1981, Catherine and Nicholas McKeever were divorced. Temporary custody of their minor children, James, then six, and Katie, age two, was awarded to Catherine McKeever.

During the next nine months, six hearings were held on the issue of permanent custody. Following the hearing on March 19, 1982, the proofs were closed but, on motion of Nicholas McKeever, they were reopened on May 7, 1982, and additional evidence by both parties was presented. At the beginning of the May 7 hearing, the trial judge made the statement that this was a "very, very close case."

At the conclusion of the May 7 hearing, the matter was taken under advisement, and both parties were asked to file summations and arguments with the trial court. On July 23, 1982, the parties were in court on pending property issues. Written arguments on the property issues were requested of each attorney. Attorney Joe R. Vespa, representing Catherine McKeever, stated that it might be easier to prepare his argument if the court's decision on the issue of child custody was known. The trial judge then announced substantially as follows:

"In view of all the testimony in this case, especially the testimony at the last hearing, I think it would be in the best interest of the children to award custody to the Father. Child support is set at $50 per week."

From this July 23, 1982, award of permanent child custody to Nicho-

las, Catherine McKeever has appealed.

Parenthetically, we note that a dispute exists regarding the exact wording used by the trial judge in announcing the permanent custody award. No court reporter was present at the July 23 hearing, and each party and the trial judge have filed certified bystander's reports of what transpired then regarding child custody. The bystander's report filed by Nicholas McKeever is essentially the same as that quoted above, which was submitted by trial judge John D. Sullivan. Catherine McKeever's report indicates that Judge Sullivan stated: "It is my opinion that because of the evidence introduced at the last hearing, it is in the best interest of the children to be awarded to the father."

The differences in the language becomes significant in light of the evidence presented at the May 7 hearing. That evidence included testimony of John Dare regarding his physical and emotional involvement with Catherine McKeever; the admission of Nicholas McKeever that he had spent the night on two or three occasions with Dorenda Dare, and the testimony of Father Michael Joseph Ferran who appeared as a character witness for Catherine McKeever.

In this appeal, Catherine McKeever contends that the trial court erred in failing to give adequate consideration both to nonstatutory factors and to those statutory factors found in section 602(a) of the Illinois Marriage and Dissolution of Marriage Act; that the trial court erred in considering the conduct of a present or proposed custodian in violation of section 602(b) of the Act; and that undue emphasis was placed on the May 7, 1982, hearing. Ill. Rev. Stat. 1981, ch. 40, par. 602.

■ Section 602(a) of the Illinois Marriage and Dissolution of Marriage Act lists factors to be considered by the court in the determination of child custody. Those factors include:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." (Ill. Rev. Stat. 1981, ch. 40, par. 602(a).)

Other factors, not included in the statute, are to be considered as well. (*In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 408 N.E.2d 1139.) Our review of the record indicates the court heard and considered testimony on nearly all of the statutory factors and some nonstatutory factors as well. Each parent's desire for custody was considered, as was the interrelationship of the children with each other, their parents, their grandparents, and John Dare, the man with whom Catherine McKeever had a relationship. In addition, the mental and physical health of the parties and the children was examined. Clearly, the relevant statutory factors were considered.

■ Catherine specified her regular attendance at church with the children as a nonstatutory factor given inadequate consideration. We do not think the record supports this claim. The testimony of Father Ferran, the pastor of Catherine's local parish, was heard at the May 7 hearing. He spoke highly of Catherine's devotion to the church and corroborated Catherine's testimony regarding her taking the McKeever children to church on a regular basis. Catherine contends that this evidence demonstrates that she is a loving mother who cares deeply about her children's spiritual development. We agree that the evidence indicates that Catherine is concerned about the spiritual well-being of her children. However, there is nothing in the record to show, as Catherine asserts, that the trial judge did not give adequate consideration to this evidence.

■ Catherine also contends that the trial court erred in refusing to interview six-year-old James regarding his custodial preferences. Such interviews are discretionary. (Ill. Rev. Stat. 1981, ch. 40, par. 604.) Catherine asserts that James is mature for his age; yet, no evidence to support this assertion was presented. In fact, no request was made that James be interviewed until a post-trial motion was filed by Catherine. Under these circumstances and considering the young age of the child, we find no abuse of the trial court's discretion in electing not to interview James. *In re Padiak* (1981), 101 Ill. App. 3d 306, 427 N.E.2d 1372; *In re DeFranco* (1978), 67 Ill. App. 3d 760, 384 N.E.2d 997.

Furthermore, the record indicates that some evidence of James' custodial preference was before the court. A letter written by James, which expressed his desire and, purportedly, that of his two-year-old sister Katie, that they remain with their mother was admitted into evidence. The letter also expressed love for their father.

At the May 7, 1982, hearing, John Dare testified regarding his involvement with Catherine McKeever. He admitted spending the night with her on several occasions at her home while the children were in

the house. In addition, he stated that he and his two minor children and Catherine and her two children had spent a weekend night in a motel in Galesburg. Everyone shared the same room and he, Catherine and Katie shared a double bed. Testimony was given by John Dare and by Catherine that this outing was for the purpose of allowing the children to swim in the motel's pool and to visit a nearby shopping mall.

A physical relationship between Catherine and John Dare apparently existed from some time shortly after the McKeever divorce. A love letter written by Catherine to John was established to have been written in the summer of 1980, more than one year before the McKeever divorce. However, no conclusive evidence of a physical relationship existing between the two at that time was presented.

During his testimony at the May 7 hearing, Nicholas McKeever admitted a physical relationship on a few occasions with Dorenda Dare. Dorenda is the wife of John Dare, and the Dares were engaged in a bitter divorce action at the time of the McKeever child custody hearings. Nicholas McKeever stated that he saw nothing wrong with two consenting adults not married to each other having sex even when children were present in the house. The Dare children were present when Nicholas and Dorenda engaged in sexual intercourse but the McKeever children were not.

It is submitted by Catherine McKeever that undue consideration was given to the evidence of her relationship with John Dare while the evidence of Nicholas McKeever's relationship with Dorenda was ignored. She contends that a double standard was applied by the trial judge.

■ While the record indicates that the trial judge placed emphasis on the testimony given at the May 7 hearing, we cannot agree that this fact indicates a double standard was applied. It must be remembered that the testimony of Father Farran was also presented at the May 7 hearing. In a case such as this, where a large amount of evidence presented over a period of months, we must defer to the broad discretion accorded the trial judge in custody cases. He is in a position to observe and evaluate the parties over a period of time and to assess their credibility. The presumption in favor of the trial court's decision is strong and compelling. *In re Brooks* (1981), 97 Ill. App. 3d 921, 424 N.E.2d 81.

Nicholas McKeever asserts that the case of *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, is controlling. In *Jarrett*, our supreme court stated that open cohabitation offends prevailing public policy and concluded that the values exhibited by Mrs. Jarrett contra-

vened statutorily declared standards of conduct and endangered the children's moral development. *Jarrett* is not controlling in the case at bar. The conduct proscribed in *Jarrett* was more open and notorious than that of Catherine McKeever. In addition, the Illinois Supreme Court in the recent case of *Thompson v. Thompson* (1983), 96 Ill. 2d 67, 78, 449 N.E.2d 88, clarified the *Jarrett* holding in these words:

> "*Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, is authority for the proposition that a child should be placed with the parent who can best serve that child. The *Jarrett* case does not establish a conclusive presumption that, because a custodial parent cohabits[ates] with a member of the opposite sex, the child is harmed. No such presumption exists in this State. The court in *Jarrett* indicated that a custody award is not arrived at by pressing one lever and mechanically denying custody to one parent; rather all of the circumstances must be considered that affect the best interests of the child. *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 344-45; Ill. Rev. Stat. 1979, ch. 40, par. 602."

■ Catherine McKeever was represented in post-trial matters by new counsel. In a post-trial motion (Ill. Rev. Stat. 1981, ch. 110, par. 2—1203), Catherine's new counsel stated that she repeatedly asked her first attorney to put certain matters into evidence but that her attorney denied her the right to do so. She asserted in the motion that her attorney's position was "continually that 'they have to prove that you are not entitled to the children.'"

On appeal, Catherine contends the trial judge erred in refusing to consider the issue of the ineffectiveness of her first attorney. We find no error since the language contained in Catherine's motion was insufficient to raise the issue of ineffectiveness of counsel, and the issue cannot be raised for the first time on appeal.

Deferring to the broad discretion of the trial judge, we affirm the judgment of the circuit court of Peoria County awarding permanent custody of the McKeever children to Nicholas McKeever.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I believe this case should be remanded to the trial court for reconsideration in light of the decision in *In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 449 N.E.2d 88. My colleagues recognize, as does the *Thompson* case, a perspective different from that applied in the

prior case of *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, when misconduct of the custodial parent is an issue. The majority suggest that even under the perspective or standard of *Thompson* the trial court's action ought to be affirmed. I do not think this is an appropriate process to be indulged in by a court of review since it would require us to weigh and evaluate the evidence in the first instance rather than reviewing such a determination by the trial court. The *Thompson* case having only been recently decided, the trial court did not have the benefit of its teachings and could not have weighed and evaluated the evidence in accord with its more flexible guidelines. It might well be, and I think we should not decide the issue as a matter of law, that the trial court might come to a different conclusion applying the *Thompson* rather than the rules of *Jarrett* which it did apply, and for that reason I respectfully dissent from the views of my colleagues.