*In re* MARRIAGE OF ROGER H. WILLIAMS, Petitioner-Appellee, and
MARIAM R. WILLIAMS, Respondent-Appellant.

Third District No. 3—89—0831

Opinion filed November 29, 1990.

614

Reynolds, Murphy & Associates, of Peoria (G. Edward Murphy, of counsel), for appellant.

James E. Shadid, of Peoria, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

This action involves a custody dispute between Roger and Mariam Williams over their three-year-old daughter, Eleanor. The trial court ruled that it was in Eleanor's best interests to award custody to the father. We affirm.

Roger Williams left the marital residence in September 1988, when he learned that his wife, Mariam, was involved in an ongoing homosexual relationship with Angela Fulton. In subsequent divorce proceedings, the trial court awarded custody of Eleanor to the father based on the following findings: (1) that the mother's open and continuing intimate cohabitation with Angela Fulton was a proper factor to consider in deciding original custody; (2) that the mother's actions indicate that she is unlikely to screen her daughter from her own lifestyle choice; (3) that the mother's choice of Angela as her lesbian partner posed a risk to the child because of Angela's serious emotional problems and past drug abuse; (4) that the child does not appear to be the mother's highest priority; and (5) that although the father, by his actions, showed a lack of good judgment during the time period that Mariam had sole custody of Eleanor, the father is better able, on the whole, to provide for the child's physical, mental, moral and emotional needs. We find that Judge Barra's holding is supported by the evidence.

On behalf of Roger Williams, the following witnesses testified. John Carlson, a friend of Roger's for 20 years, testified that Roger was a very nurturing parent and that he can provide a stable environment for Eleanor. Laurel Hancock, a first-grade school teacher, stated that she and her five-year-old son do quite a few things with Roger and Eleanor and that Roger has a positive, loving relationship with Eleanor. Lori Williams, who was married to Roger Williams' brother and whose children play with Eleanor, testified that Roger has a very

positive approach to disciplining and caring for Eleanor. J. Wesley Bennett, the minister at the church where Eleanor was baptized, stated that based on his observations and experiences in getting to know, Roger, Roger is a fine young man and would make a good parent. Richard Nelson, owner and operator of the Pilot Club, a restaurant and bar in Bartonville, Illinois, testified that Roger visited the Pilot Club three times a week and that on many occasions he would bring Eleanor and Mariam. Nelson stated that when Roger and Eleanor visited his establishment, the child seemed very happy and Roger acted like a good, very loving father. Nelson also stated that Roger always behaved like a gentleman in his presence and never appeared drunk in his presence.

Dr. Eric Ward, a pediatric psychologist in Peoria, Illinois, testified as an expert witness for Roger Williams. Dr. Ward stated that one-half of his practice involves children involved in separation or divorce. Dr. Ward held 10 hours of examination with Roger Williams, Mariam Williams, Eleanor Williams, and Angela Fulton, and observed the interaction between the child and the adults. Dr. Ward further reviewed letters that were written by Angela, the mother, and the father, and examined a deposition of Mariam Williams. In Dr. Ward's opinion, the best interest of the child would be served by placing custody of the child with the father based on the following findings: parent/child interactions and discipline, the instability of the relationship between Mariam and Angela, and Angela's past and present instability. Regarding Angela, Dr. Ward specifically voiced concerns about her young age (18 years old), her history of parent-child sexual abuse, and the relatively short period of time that she has been in a recovery period from alcohol and drug abuse. Dr. Ward also stated that he was concerned that Mariam did not give Angela sufficient time to work through some of her problems before becoming involved in an intimate relationship with her.

Roger Williams testified that he is currently working for Homer Williams Construction Company and rents the downstairs and part of the main floor of a single-family dwelling. Roger and Eleanor each have their own bedrooms. Roger testified that he has fully exercised his visitation rights and that during said visitation, Roger engaged in activities such as rock hunting, planting flowers, growing vegetables and playing on his parents' farm with Eleanor. Roger stated that he wants custody of Eleanor for her moral upbringing, self-esteem, and the traditional type of family setting that he could provide.

At trial, evidence was produced to show that Roger had violated a protective court order prior to the resolution of this custody dispute.

In September 1988, Roger removed Eleanor for six weeks from the physical care of Mariam without her consent. During this six-week period, the court granted Mariam temporary custody and issued an emergency order of protection in that regard. Roger did not comply with said order, and on April 24, 1989, he was found in contempt of court for violating the protection order. Additionally, evidence was presented that Roger had engaged in demeaning name-calling towards both Mariam and Angela when he picked Eleanor up for visitation. Roger had called Angela a "little dyke bitch" and Mariam a "dyke." It is disputed whether or not this name-calling occurred while Eleanor was present.

On behalf of Mariam Williams, the court heard testimony from Angela Fulton, Mariam Williams, and Dr. Richard Grant. Angela Fulton was treated as an interested party at the request of the defendant's attorney because of her special relationship with Mariam.

Angela, who was 18 years old at the time of the hearing, testified that she first met Mariam in May of 1987, when she was 16 years old while a patient at the Lifeway Chemical Dependency Center (hereinafter Lifeway). Mariam was a nurse at Lifeway and provided routine health care to Angela. Angela further testified that in April 1987, she tried to commit suicide and for six years, prior to entering Lifeway, she used marijuana, cocaine, quaaludes, alcohol, uppers and downers. Angela also stated that she had been sexually abused as a child and became pregnant at the age of 12. At the time of the trial court hearings, Angela was continuing to undergo counseling to deal with her family situation and drug abuse situation.

Angela stated that she began to see Mariam on a social basis while she was an outpatient at Lifeway. Angela was released from Lifeway in July of 1987 and received outpatient care for six months following her release. Angela further testified that she presently lives with Mariam and that they are involved in a lesbian relationship which she considers to be permanent in nature. Angela perceives her role with Eleanor to be an authoritative adult in the household with the ability to discipline and correct.

Angela admitted writing a letter to Mariam in August of 1988, wherein she made the following statements: (1) "too many of today's victims are tomorrow's abusers"; (2) "blood comes up alot in my mind when I look at my life"; (3) Angela had a dream "about people being shot and that suddenly [I] was standing over them with a gun in [my] hand"; and (4) Angela had a dream that she "killed Ele (Eleanor) in the quiet room." The "quiet room" is a room at the Lifeway facility where patients go to take out their frustrations.

Angela stated that she wants to fight her past and that she has a positive outlook towards the future. Angela is presently a student at Bradley University majoring in psychology. During her freshman year at Bradley, she received all A's and B's and made the dean's list. Angela also works part time at the Methodist Hospital childcare center where Eleanor attends daycare.

Mariam Williams testified that the staff at Lifeway did not think that it was a good idea for her to have contact with Angela on a social basis while Angela was still an outpatient with Lifeway. Nevertheless, Mariam chose to have contact with Angela allegedly on a friendship basis. Mariam testified that she did not consider herself a lesbian until mid-September of 1988, after Roger had left the marital residence. Mariam stated that Eleanor would be better off in her custodial care because she provided a more loving and caring environment for Eleanor, under a more routine daily schedule. Further, Mariam felt she had more quality time and activities to devote to Eleanor and that while Roger could adequately take care of Eleanor's physical needs, she could better take care of Eleanor's emotional needs. At the time of the hearing, Mariam had changed departments at Methodist Hospital and was working as a labor and delivery nurse. Mariam, Angela and Eleanor resided in a three-story, four-bedroom house.

Dr. Richard Grant, a medical psychiatrist specializing in marital and sexual dysfunctions, testified as an expert witness for Mariam. Dr. Grant met with both parties and Angela in his evaluation. Dr. Grant concluded that custody should be retained by Mariam, who had physical custody for the previous one-year period. The basis for Dr. Grant's conclusion was that Eleanor had prospered under the custodial care of Mariam, that Roger did not know how to foster independence or treat Eleanor or Mariam with respect, and that based on his clinical evaluations and personality tests, Roger had a strong tendency to "distort facts or lie in order to present information in a favorable light."

On cross-examination, Dr. Grant agreed that there is considerable instability with relationships in which one of the partners is a teenager. Dr. Grant also stated that he did not evaluate any interaction between Eleanor and her parents, that custody situations are not routinely part of his practice, and that Dr. Ward has more expertise in evaluations of children than he does.

■ On appeal, the mother argues that the trial court abused its discretion in considering the mother's lesbian relationship in violation of section 602(b) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Act) (Ill. Rev. Stat. 1989, ch. 40, par. 602) when all

the evidence indicated that said relationship would have no adverse consequences on the minor child. Additionally, the mother claims that the trial court abused its discretion by not properly considering those factors delineated in section 602(a) of the Act. Section 602 directs that the best interest of the child be considered in any child custody determination, stating as follows:

"§602. Best Interest of Child. (a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved;

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person; and

(7) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child.

(c) The court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of their child is in the best interest of the child. However, such presumption shall not be construed as a presumption that an order awarding joint custody is in the best interests of the child." (Ill. Rev. Stat. 1989, ch. 40, par. 602.)

We find that based on all the evidence, the trial court, pursuant to section 602, did not abuse its discretion in awarding custody to the father.

■ A decision of the trial court regarding custody will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence or unless it appears that manifest injustice has been done. (*In re Custody of Switalla* (1980), 87 Ill. App. 3d 168.) The presump-

tion favoring the result reached by the trial court is strong and compelling in custody cases because it, rather than the reviewing court, is in a better position to evaluate the credibility of the witnesses and the needs of the children. *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617.

Under section 602(a) the trial court shall determine custody in accordance with the best interest of the child by considering *all relevant factors.* (Ill. Rev. Stat. 1989, ch. 40, par. 602(a).) Here, the evidence reveals that the mother exhibited gross character defects. The mother, while a nurse at Lifeway, actively recruited a patient who was a minor to engage in an illicit and criminal sexual relationship. (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(4).) In so doing, the mother showed her propensity to feed her sexual appetite without regard to morals, ethics or law. As an employed nurse at the drug treatment center, Mariam abused her position in order to take advantage of an underage drug addict whom she desired as a sexual partner. Such behavior is not only reprehensible but criminal. Thus, the trial court, being aware of this, was correct in deciding that the father was better able to provide for the child's mental, moral and emotional needs.

■ Moreover, the mother's argument that the trial court was incorrect in taking into consideration Mariam and Angela's homosexual relationship in determining original custody is without merit. Section 602(a)(3) states that the court shall consider the interaction and interrelationship of the child with any person who may significantly affect the child's best interest. Angela is a practicing homosexual and drug abuser who has a life history of being sexually abused. Angela, now 18 and living in the same household with Mariam, considers herself to be an authoritative adult with the ability to discipline and correct Eleanor. We agree with the trial court that the choice of Angela as a partner who will help raise the child through her formative years is not in the best interest of Eleanor.

Angela is an 18-year-old teenager who, at the time of the hearing, was still undergoing counseling for sexual abuse and for recent drug abuse. Angela admitted writing a letter to Mariam in August of 1988, where she dreamed about killing Eleanor. Angela also indicated in that letter that many of the victims of sexual abuse become the perpetrators of sexual abuse. Such evidence supports Dr. Ward's and the trial court's conclusion that Angela's present and past emotional problems pose a risk to Eleanor and provide a high degree of instability in the household.

■ Additionally, we disagree with the mother's contention that the trial court erred in considering the mother's open and continuing

homosexual cohabitation with Angela as a factor in deciding original custody. In *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, our supreme court found that a parent's continuing cohabitation with a member of the opposite sex can be considered in a petition to modify a custody judgment, even without tangible evidence that the child has been harmed by the relationship. Thereafter, the Illinois Supreme Court in *In re Marriage of Thompson* (1983), 96 Ill. 2d 67, clarified its position in *Jarrett* by stating:

"The *Jarrett* case does not establish a conclusive presumption that, because a custodial parent cohabits with a member of the opposite sex, the child is harmed. No such presumption exists in this State. The court in *Jarrett* indicated that a custody award is not arrived at by pressing one lever and mechanically denying custody to one parent; rather all the circumstances must be considered that affect the child." (*Thompson*, 96 Ill. 2d at 67.)

We agree with *Thompson* that all the circumstances that might affect the child must be considered in awarding custody. In fact, section 602(a) clearly states that the court shall consider *all relevant factors* to determine custody in accordance with the best interest of the child. (Ill. Rev. Stat. 1989, ch. 40, par. 602(a).) As in *Jarrett* and *Thompson*, we find that Judge Barra did not improperly consider as a factor the effect of the mother's homosexual relationship with Angela and how that relationship may affect Eleanor.

For the reasons indicated herein, the judgment of the circuit court of Peoria County is, therefore, affirmed.

Affirmed.

GORMAN and SCOTT, JJ., concur.