Linda M. BURROWS

v.

Michael T. BRADY.

No. 91–96–A.

Supreme Court of Rhode Island.

April 3, 1992.

Cynthia Collins, McKenney & Collins, Wakefield, for plaintiff.

Philip Sloan, Jr., Orsinger & Nardone, Westerly, A. Gregory Frazier, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This matter is before the Supreme Court on appeal by the plaintiff, Linda M. Burrows (the mother), from a trial justice's order granting the motion of the defendant, Michael T. Brady (the father), to modify the final judgment with respect to the father's visitation rights. The trial justice granted the father visitation with the children every Sunday morning, to enable the children to attend Catholic Mass and Confraternity of Christian Doctrine classes (CCD classes). For the reasons set forth herein, we affirm the decision of the Family Court.

The facts pertinent to this appeal are as follows. The parties were married in the Roman Catholic Church on October 22, 1977. At the outset of their marriage the father practiced Catholicism and the mother was a practitioner of the Baptist faith, but she has since become affiliated with the Episcopal Church. During their marriage the couple had three children, all of whom were baptized into the Roman Catholic faith. Each child has also received First Communion and participated in religious instruction appropriate to that sacra-

ment.The mother asserts that during this same period the children regularly attended non-Catholic church services with her.

In 1987 the parties began experiencing marital difficulties, which resulted in the father's vacating the marital domicile in September of that year. During the separation and pending the divorce, the children lived with their mother. In August 1989 the parties entered into a written property-settlement agreement. The agreement provided that the parties would retain joint custody of the three minor children, and it granted the mother physical placement of the children. The agreement also permitted the father to have unlimited and unrestricted visitation with the minor children. On March 7, 1990, the Family Court entered a final judgment that incorporated the parties' property-settlement agreement and granted the mother's complaint for divorce.

The parties' versions of the visitation schedule they practiced after the separation and the children's attendance at their parents' respective religious services differ greatly. The mother asserts that after the separation the children attended church with her "almost exclusively" and that "there were no arrangements for regular visitation, although Mr. Brady would stop by to visit with the children a few times each week." The mother also avers that shortly after the divorce the children, accompanied by their father, attended CCD classes "on an every other weekend basis." However, according to the mother, the children continued to attend Episcopal services regularly during this period and their attendance at Catholic Mass "dropped off almost entirely" at the end of the school year. The mother alleges that sometime in September 1990, the father began insisting that the children attend Catholic Mass with him every Sunday morning. In response to this demand, the mother insisted on an every-other-weekend schedule of visitation in order to provide the children with equal time to attend Episcopal services with her.

The father contends that after the separation his practice was to take the children to Catholic Mass and Catholic religious in-struction every week, not every other weekend as the mother suggests. The father submitted the children's CCD class-attendance records for the years 1989–1990 and 1990–1991 to the trial justice. The CCD classes follow a schedule that roughly parallels a regular school year; therefore, the classes run from September through April. During the 1989–1990 CCD school year, the class as a whole met twenty-two times—Daniel missed three classes, Sean missed four classes, and Bridgid–Leigh missed one class. The attendance records for the 1990–1991 Sunday school year begin in September and end in December. During that time each of the children missed five classes. The father argues that in June 1990, the mother unilaterally changed their visitation schedule to every other weekend in order to accommodate her anticipated school and work schedules. This change appears to have coincided with the father's remarriage to another woman.

On September 26, 1990, the father filed a motion to modify the Family Court's final judgment. To enable the children to attend Catholic Mass and to continue their religious training in that faith, the father requested that he be awarded visitation with the children every Sunday morning. In order for the children to continue attending Episcopal church services, the mother filed an objection to the father's motion, seeking to continue an every-other-weekend visitation schedule.

After reviewing the memoranda submitted by the parties, the trial justice granted the father's motion to modify. The justice allowed the father to have the children every Sunday to enable them to attend Catholic Mass and to satisfy their CCD requirements, until the youngest child is confirmed. The trial justice found that the children had been exposed to both the Episcopal and the Roman Catholic religions on a "relatively frequent basis" and that the children were not troubled by their parents' efforts to expose them to the two different faiths. The justice considered the formal effort of the parties "to engage these children in Roman Catholicism to satisfy the requirements of that religion." She also reviewed the CCD class-attend-

ance records, which contradicted the mother's assertions that the children's attendance at these classes had only been sporadic. Relying upon the evidence, the trial justice determined that since the separation it had been the practice of the father, as evidenced by the children's attendance records, to take the children to Catholic Mass and CCD class every Sunday. Therefore, the trial justice confirmed the visitation schedule practiced by the parents after their separation. The trial justice held that on alternating Sundays the children were to be returned to their mother upon completion of Mass and CCD classes.

On appeal the mother argues that the trial justice abused her discretion in granting the father's motion to modify. She claims that the trial justice erred by depriving her of the opportunity to share her religious practices with her children when there was no evidence that the children were suffering mental or physical harm. The Family Court order grants the father custody every Sunday. The mother argues that this order precludes her from taking the children to Episcopal services on Sunday morning because this is the only time during which Episcopal services are provided. The mother also contends that the trial justice mistakenly gave weight to the children's "formal" and "consistent" training in the Catholic faith and to the mother's "consent" to this training. The mother avers that even if the court applied a best-interest approach to this matter, the record did not support finding that it was in the children's best interests to attend Catholic Mass and religious training every Sunday with their father. Lastly she argues that the court erred in failing to devise a visitation schedule that would minimize the restriction on her right to take the children to Episcopal services.

■ Despite the assertions of the mother's attorney, we conclude that the trial justice's order does not affect the mother's rights guaranteed by the First Amendment to the United States Constitution or article I, section 3, of the Rhode Island Constitution. It is not a question of free exercise for a trial justice to resolve visitation disputes between two custodial parents. The ruling of the trial justice need not satisfy the three-prong test enunciated in *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745, 755 (1971).

■ The paramount consideration in cases involving visitation rights or custody disputes is the best interests of the child. *Pettinato v. Pettinato,* 582 A.2d 909, 913 (R.I.1990); *Seravo v. Seravo,* 525 A.2d 922, 925 (R.I.1987). All other considerations are subordinate to the child's intellectual, moral, physical, and spiritual well-being. We conclude that when evaluating what is in the best interests of a child, a trial justice has the authority to consider the religious beliefs or disbeliefs of the child's parents, as the issue relates to the best interests of the child, without running afoul of the Constitution. *See In re Marriage of McKeever,* 117 Ill.App.3d 905, 907–08, 73 Ill.Dec. 164, 166–67, 453 N.E.2d 1153, 1155–56 (1983); *In re Marriage of Grandinetti,* 342 N.W.2d 876, 879 (Iowa App.1983); *Aldous v. Aldous,* 99 A.D.2d 197, 199, 473 N.Y.S.2d 60, 62 (1984). However, a trial justice may not make judgments on the comparative merits of the religions practiced by the parents or draw any conclusions from the fact that a parent does not practice any religion. *See Rinehimer v. Rinehimer,* 336 Pa.Super. 446, 450–51, 485 A.2d 1166, 1168 (1984). Fundamental fairness dictates that the trial justice take a stance of benign neutrality toward both parents' religious or nonreligious viewpoints. *See LeDoux v. LeDoux,* 234 Neb. 479, 485, 452 N.W.2d 1, 5 (1990); *Zummo v. Zummo,* 394 Pa.Super. 30, 84, 574 A.2d 1130, 1157 (1990). In these situations a trial justice is considering religion as a factor relating to the child's welfare; the justice is not advancing the religion of one parent or inhibiting the religious or nonreligious stance of the other. Although it is a consideration, religion should not be the determinative factor in visitation or custody matters.

The mother cites several cases from other jurisdictions that concluded that there must be a substantial threat of physical or mental harm to the child in order to uphold a court order restricting the parent's right

to affect the religious upbringing of his or her child. *Sanborn v. Sanborn,* 123 N.H. 740, 749, 465 A.2d 888, 894 (1983); *Zummo,* 394 Pa.Super. at 51, 574 A.2d at 1141. In *Zummo* the court found unconstitutional an order prohibiting a father from taking his children to religious services that were contrary to the mother's faith. *Zummo,* 394 Pa.Super. at 85, 574 A.2d at 1157. The court determined that Mrs. Zummo had failed to demonstrate that the father's religion substantially threatened the physical or emotional well-being of the children. Therefore, the court determined that the direct prohibition imposed on the father by the trial court was impermissible. *Id.*

■ The mother's reliance on *Zummo* and similar cases is misplaced. The orders enunciated by the trial justices in *Zummo* and in the present case are markedly different. The key difference between *Zummo* and the present case is that the *Zummo* order was a restriction of the father's right to indoctrinate his children in his religion because it prohibited him from ever taking his children to the religious services of his faith. In the present case the trial justice's decision on the motion to modify was not a restriction; the order did not infringe upon the mother's rights to teach her children the formal practices of the Episcopal faith. The order was more in the nature of an accommodation of each parent's right to inculcate religious beliefs in his or her children. The order simply sets out a period during which the father may take the children for Catholic religious training; thereafter, the mother is free to educate her children concerning her religious beliefs at any other time. Had the order amounted to a restriction, we agree with the mother that there would need to be evidence of a substantial threat of physical or mental harm to the child. However, in this case the trial justice did not need to find any harm to the children because the justice's order did not amount to a restriction of the mother's First Amendment rights.

The *Zummo* court itself upheld an order similar to the one involved in this case. Mr. Zummo was required to take the children to their mother's synagogue for Sunday school during his weekend visitation. 394 Pa.Super. at 83, 574 A.2d at 1157. The Pennsylvania court found a "material and controlling distinction" between this portion of the order and the portion prohibiting him from taking the children to non-Jewish services. *Id.* The court determined that it was not unconstitutional for a court to carve out a period each Sunday during which the children could receive religious training in the Jewish faith. *Id.* at 84, 574 A.2d at 1157. The court found that a directive of this type did not restrict the parents' right to instill their religious beliefs or disbeliefs in their children. *Id.* The trial court had taken a neutral stance toward both parents' religious viewpoints, and the order was not designed to frustrate the father's religion. *Id.*

■ Other jurisdictions have established that a custodial parent has a superior right to determine the religious upbringing of the children. However, in this case the parents have joint custody of the children, and therefore, we believe that both parents have an equal right to influence the religious beliefs of their children.

■ We are of the opinion that the trial justice's consideration of the religious practices of the children and their parents in the context of considering the children's best interests was appropriate. The justice found that the children were baptized as Roman Catholics, had participated in sufficient religious instruction to receive their First Communion, and are preparing for their confirmation. The memoranda of the parties differed on the question of the visitation schedule maintained by the parties since the separation. Therefore, the trial justice relied on the documented proof produced by the father to determine that the children had in fact regularly attended CCD classes on an every-week basis for at least the 1989–1990 year. The mother failed to produce evidence to rebut the implication raised by the attendance records or to prove her contentions that the children had attended Episcopal services with her. Therefore, the trial justice found that it had been the past practice of the father

to take the children to Mass and CCD classes every Sunday. In her decision the trial justice, by setting out a period each Sunday during which the children may attend Mass and receive further religious instruction, simply reaffirmed this past practice of the parties. The justice made a neutral decision without deciding between the merits of the religions embraced by the parents. The trial justice did not prohibit the mother from taking her children to services of her faith or prevent her from exposing the children to the Episcopal faith. We also conclude that the confirmation of the parties' past practice was not designed to frustrate the mother's religious viewpoints in any way but was intended to uphold a visitation schedule that was in the children's best interests.

■ The mother argues that the trial justice improperly gave weight to the "formal" and "consistent" religious training of the children in the Catholic faith. The mother points out that in the record, the trial justice stated that there had been efforts to provide "some required formalized training [in the Catholic faith] and it has been consistent." We do not find the mother's argument persuasive. This court is aware that there are many religions that do not require a significant amount of religious training in order to satisfy the requirements of that faith; therefore, we conclude that a trial justice is not empowered to give preference to a particular religion merely because of its formalized or informalized nature. It is also not within the scope of a trial justice's authority to favor a consistent approach and disfavor an inconsistent approach to religion. We believe that the trial justice used the terms "consistent" and "formal" only as a means of expressing her conclusion that after the separation it had been the father's practice to take his children to Mass and CCD classes every week. We do not believe that it was the justice's intent to express a preference for a religion merely because of its formalistic nature, nor was she favoring a consistent approach to religion and disfavoring an inconsistent approach.

■ The mother makes reference to the fact that the trial justice noted on the record that the children were baptized and received religious training "with the consent of the mother." We believe that "consent" by a parent to a religious practice does not limit that parent's right to have an impact on the religious upbringing of his or her children. After reading the record in this case, we conclude that the trial justice did not give any weight to the "consent" of the mother. The justice specifically stated that she made her decision "based on the fact that there has been some required formalized training and it has been consistent." We believe that the justice's comments amounted to nothing more than surplusage appended to her other substantive considerations.

As a general rule the award or modification of visitation rights rests within the discretion of the trial justice. *Paolino v. Paolino,* 420 A.2d 830, 834 (R.I.1980). Our scope of review on this issue is limited to a determination of whether the trial justice abused his or her discretion. *Seravo,* 525 A.2d at 926. Findings of the trial justice "will not be disturbed on appeal unless the trial judge misconceived or overlooked material evidence or was clearly wrong." *Id.* at 925; *Veach v. Veach,* 463 A.2d 508, 510 (R.I.1983).

Our review of the record in this case discloses that the trial justice did not overlook or misconceive any material evidence, nor was she clearly wrong. She carefully reviewed the briefs submitted by the parties and made proper conclusions therefrom. We therefore conclude that the order granted in this case was within the sound discretion of the trial justice.

We note for clarification purposes that although procedurally the order of the trial justice was called a modification, in substance it was merely a reaffirmation of the visitation schedule adhered to by the parties after their separation.

It is a shame that the parents were unable to reach an amicable solution to this visitation problem on their own. Although we are certain that such a situation did not exist in the present case, we are concerned

that a parent may have ulterior motives behind his or her action in postdivorce religious-upbringing cases. Unfortunately it appears that religious training may provide a means to seek revenge and to limit a parent's visitation privileges. All too often parents use the children as "footballs to satisfy the 'I'll show you' attitudes with which estranged spouses too frequently are imbued." *Smith v. Smith*, 9 Utah 2d 157, 159, 340 P.2d 419, 421 (1959). In these cases it is the children who ultimately suffer.

For the reasons stated, the mother's appeal is denied and dismissed. The order entered in the Family Court is hereby affirmed.