*In re* MARRIAGE OF DEENA A. ARCAUTE, n/k/a Deena A. Warner, Petitioner-Appellee, and OTTO I. ARCAUTE, Respondent-Appellant.

Third District    Nos. 3—93—0413, 3—93—0581 cons.

Opinion filed April 15, 1994.

Winget & Kane, of Peoria (Walter W. Winget, of counsel), for appellant.

Law Offices of John P. Edmonds, Ltd., of Chillicothe (John P. Edmonds, of counsel), for appellee.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

Respondent, Otto Arcaute, appeals from an order of the circuit

court awarding custody of the parties' minor child, Mercedes, to petitioner, Deena Arcaute (now Warner). We affirm.

Petitioner and respondent were married in December of 1988. Mercedes was born in July of 1989. On February 14, 1991, petitioner filed a petition for dissolution of marriage. A temporary custody arrangement was established whereby each parent had custody of Mercedes on alternating weeks until a permanent custody determination could be made.

Petitioner failed to appear for hearings and failed to comply with discovery requests. As a result, a default judgment was entered on September 26, 1991, which dissolved the marriage of the parties, divided the marital assets, awarded permanent custody of Mercedes to respondent, and awarded certain visitation rights to petitioner.

On October 23, 1991, petitioner filed a motion to vacate, modify or reconsider the September 26 order. On June 22, 1992, the court denied petitioner's motion in regard to the property settlement provisions and the judgment of dissolution. However, on the issue of custody of Mercedes, the court granted petitioner's motion and modified the provisions awarding custody to respondent and visitation to petitioner so as to make those provisions temporary only. The court found that "the best interests of the minor must be taken into account and both potential custodial parents should be given their day in court."

A custody hearing was held on February 18, 19 and 22, 1993. On March 18, 1993, the court issued a detailed order which included 29 separate factual findings. The court awarded custody of Mercedes to the petitioner with liberal visitation to respondent. Respondent's motion for reconsideration was denied, and this appeal followed.

Respondent first argues that the trial court erred in failing to apply section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/610 (West 1992)), which provides that a custody judgment cannot be modified within two years of its entry unless the court determines that the child's present environment seriously endangers his or her physical, mental, moral or emotional health. Respondent argues that since the trial court made no such findings, it should not have "modified" the prior custody order. Respondent's argument is meritless.

■ The trial court's March 18 order awarding custody of Mercedes to petitioner was not a modification of a prior custody order. The only custody order in effect at that time was a *temporary* award of custody to respondent until a custody hearing was held. "A temporary order is provisional in character and continues only during

the pendency of the action. When the action becomes final, the temporary order has fulfilled its purpose and is superseded by the provisions of the final decree." (*In re Marriage of Simmons* (1991), 221 Ill. App. 3d 89, 91, 581 N.E.2d 716, 718-19.) The only modification of a custody order in this case occurred on June 22, 1992, when the trial judge modified the provisions of the default judgment dealing with custody making them temporary rather than permanent in order to allow petitioner to have a hearing on the issue. The order from which respondent appeals was not a modification of a previous custody judgment. Therefore, section 610 of the Act is inapplicable.

Respondent next argues that the trial court improperly relied on the "tender years" doctrine in awarding custody to petitioner. As respondent points out, the "tender years" doctrine, an arbitrary presumption that the mother is the proper custodial parent of children of tender years unless she is proven unfit, has long been rejected by the courts of this State. (*In re Marriage of Bush* (1988), 170 Ill. App. 3d 523, 525 N.E.2d 163; *In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 408 N.E.2d 1139; *Strand v. Strand* (1976), 41 Ill. App. 3d 651, 355 N.E.2d 47.) Contrary to respondent's assertions, the record does not indicate that the trial judge applied this presumption in this case.

■ Respondent first notes that the court used the term "tender years" in its order. The court stated, "Both parents are fit and proper persons to have custody and responsibility for a child of tender years." This court has held that "the use of the term 'tender years' does not necessarily indicate that the court was engaging in the presumption, contrary to law, that the mother is the proper custodian." (*In re Custody of Switalla* (1980), 87 Ill. App. 3d 168, 173-74, 408 N.E.2d 1139, 1143.) On the contrary, the use of the term "tender years" in this case indicates that the court was *not* engaging in a presumption in the favor of the mother since the court found both parents to be proper custodians of a child of tender years.

Respondent also relies on the following statement from the court's written order as evidence that the court applied the tender years doctrine:

"The [c]ourt finds that generally the best interests of any child are significantly enhanced by the close nurturing relationship with the parent [to] whom they are most attached; and other things being equal, pre-adolescent children and adolescent young people derive substantial benefits from the close personal relationship with the same sex parents to whom they look for a model."

This statement indicates only that the trial judge believes it is generally in a young child's best interest to maintain a close relation-

ship with the parent of the same sex. A trial court may consider the age and sex of a child and the sex of a parent as relevant factors in making custody determinations. (*Switalla*, 87 Ill. App. 3d at 172, 408 N.E.2d at 1142.) This statement in no way indicates any hard and fast rule adopted by the trial judge in awarding custody, and it certainly does not indicate that he engaged in a presumption that mothers should be awarded custody of young children.

We next address respondent's contention that the trial court's decision to award custody to petitioner was against the manifest weight of the evidence. In a custody dispute, the primary consideration is the best interest and welfare of the child. (750 ILCS 5/602(a) (West 1992); *Loyd v. Loyd* (1980), 92 Ill. App. 3d 124, 415 N.E.2d 1105.) Deciding which parent should be awarded custody requires an evaluation of the temperaments, personalities and capabilities of the parties, and the demeanor of the witnesses who testify at trial. (*In re Marriage of Felson* (1988), 171 Ill. App. 3d 923, 525 N.E.2d 1103.) The trial judge is clearly in the best position to evaluate these factors. (*In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 418 N.E.2d 947.) A trial court is therefore given broad discretion in awarding custody, and there is a strong and compelling presumption in favor of its determination. (*In re Marriage of Hazard* (1988), 167 Ill. App. 3d 61, 520 N.E.2d 1121.) The trial court's decision on this issue will not be disturbed unless it is against the manifest weight of the evidence. *In re Marriage of Dall* (1989), 191 Ill. App. 3d 652, 548 N.E.2d 109.

■ Respondent first argues that the trial court failed to give adequate consideration to the fact that almost immediately after petitioner left the family home in January of 1991, she allowed another man to move in and live with her and her minor daughter from a previous marriage. Petitioner also violated a specific court order prohibiting her from having overnight visitation with Mercedes while the man was present. Respondent cites *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, for the proposition that custody may be changed from one parent to the other merely upon a showing that the custodial parent is living with a person of the opposite sex, even without tangible evidence that the child has been harmed. However, in *In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 449 N.E.2d 88, our supreme court clarified its position in *Jarrett* by stating:

> "The *Jarrett* case does not establish a conclusive presumption that, because a custodial parent cohabits with a member of the opposite sex, the child is harmed. No such presumption exists in this State. The court in *Jarrett* indicated that a custody award is not arrived at by pressing one lever and mechanically denying custody to one parent; rather all the circumstances must be

considered that affect the best interests of the child." (*Thompson,* 96 Ill. 2d at 78, 449 N.E.2d at 93.)

It is clear that the trial judge considered the petitioner's conduct concerning this relationship in reaching his decision. In its written order the court stated that petitioner's decision to allow the man to move in with her was an example of poor judgment. However, the court found that this conduct had no effect on Mercedes, who was between 16 months and $3^1/_2$ years old at the time the conduct occurred. The court also noted that petitioner was now married to the man in question, Richard Warner, and that Richard was a well-adjusted adult who had established a relationship with Mercedes.

Respondent also points to a number of other facts which he claims the trial court failed to consider and which weigh in favor of awarding him custody. Our review of the record indicates that the trial court carefully weighed and considered all of the evidence presented.

Petitioner presented eight witnesses and her own testimony in an attempt to prove that awarding her custody of Mercedes would be in the child's best interest. Respondent also presented eight witnesses and his own testimony to prove that he would be the better custodial parent. Petitioner presented the testimony of her new husband, her two children from previous marriages, and a number of friends and co-workers. Each testified that petitioner is a loving, caring mother who has a wonderful relationship with Mercedes. Respondent presented the testimony of Mercedes' daytime baby sitter, the director of the preschool attended by Mercedes, a teacher from the school, and a number of his personal friends. Each testified that Mercedes is a bright, well-behaved child and that she and respondent have a healthy, loving relationship.

There was ample evidence, and in fact the trial court stated, that both parties were fit to be custodial parents. Therefore, this case called for a particularly difficult decision by the trial judge based in large part upon the personality and temperament of the parties. In addition to the extensive factual findings contained in his written order, the trial judge also made a lengthy statement on the record after the hearing in which he explained some of his reasons for awarding custody to petitioner. For example, he stated:

> "I was *** impressed with the nature of the mother's relationship with her witnesses. Reading between the lines somewhat, *** two of mother's witnesses described mother as their best friend. And it was clear from the way they testified that these were quality people who had experience in mothering themselves and I valued their opinions ***."

He stated that there was nothing wrong with respondent's witnesses,

"but they simply lacked the same qualities and depth" and seemed more like acquaintances than close personal friends. The judge stated that he had the impression that respondent was a "loner" whose relationships with others seemed somewhat shallow. These findings exemplify the need for a strong presumption in favor of the trial court's decision in custody cases. Such findings can be important in making a custody determination and can only be gleaned from firsthand observance of the demeanor and personality of the witnesses while they are testifying.

The trial judge also stated that an important factor in his decision was that respondent's work schedule allows him very little time to spend with Mercedes during the week, while petitioner's work schedule allows for significantly more parental contact. It is true that certain facts in this case may have weighed in favor of awarding custody to respondent. However, in light of all of the evidence presented, we find that the trial court's decision to award custody to petitioner was not against the manifest weight of the evidence.

■ Respondent also contends that the trial court made a number of erroneous evidentiary rulings. He first argues that the court erred in allowing petitioner to testify that at the conclusion of one of her visitation periods Mercedes began to cry when she was told that it was time to return to her father. Respondent claims that the trial court should have sustained his objection to this testimony because it was hearsay. Respondent is incorrect. Exclamations of pain or suffering or other spontaneous outward manifestations of emotion are not hearsay statements. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.4, at 576 (5th ed. 1990); see also R. Hunter, Trial Handbook for Illinois Lawyers. § 65.31, at 900 (5th ed. 1983) ("A shriek, moan, or crying *** [is] not subject to the hearsay rule").) The trial court did not err in allowing this testimony.

■ Respondent next argues that the trial court erred in allowing petitioner to testify as to why she felt she should be awarded custody of Mercedes. Respondent contends that by allowing this testimony, the court improperly permitted petitioner to offer an opinion on the ultimate issue in the case. Initially, we note that the ultimate issue in this case was *who* should be awarded custody, not why petitioner felt that she should have custody. Obviously, in a custody dispute such as this both parties feel they should be awarded custody of the child. We see no reason why the parties should not be allowed to explain to the court their reasons for wanting custody and why each feels that it would be in the child's best interest if he or she were awarded custody. As petitioner points out, one of the factors to be considered by the court in awarding custody is the wishes of the parents. See 750 ILCS 5/602(a)(1) (West 1992).

■ Respondent next contends that the court erred in refusing to allow him to present evidence concerning the quality of the public school system in the area where he lives. The trial court found that, because Mercedes was only 3½ years old, any evidence concerning the quality of the public school was irrelevant. Determining the relevancy of evidence is largely within the discretion of the trial court (*O'Brien v. Hertl* (1992), 238 Ill. App. 3d 217, 606 N.E.2d 225), and we will not disturb its decision here.

■ Finally, respondent argues that the trial court erred in denying his motion to reopen the case to present additional evidence. Respondent filed his motion on April 16, 1993, nearly two months after the custody hearing and almost a month after the trial court issued its order. Respondent sought to present evidence concerning an altercation between himself and petitioner's husband which occurred on March 31, 1993, 13 days after the trial court issued its order awarding custody to petitioner. The court denied respondent's motion, stating that there must be "some finality" to the case. The decision of whether to allow a case to be reopened for the introduction of further evidence rests in the sound discretion of the trial court (*In re Marriage of Weinstein* (1984), 128 Ill. App. 3d 234, 470 N.E.2d 551), and its decision will not be reversed absent a clear abuse of that discretion (*In re Marriage of Suarez* (1986), 148 Ill. App. 3d 849, 499 N.E.2d 642). We conclude that the trial court did not abuse its discretion in denying respondent's motion.

For the reasons stated above, the order of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY and BRESLIN, JJ., concur.