NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220061-U

NO. 4-22-0061

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 7, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| (MARDI L. A., | ) | Circuit Court of |
|      Petitioner-Appellee, | ) | Rock Island County |
|      and | ) | No. 20D234 |
| JAMAL A., | ) | |
|      Respondent-Appellant). | ) | Honorable |
| | ) | John L. McGehee, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice DeArmond and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The appellate court affirmed the trial court's order allocating parenting time and decision-making responsibilities because the order was not against the manifest weight of the evidence. The appellate court vacated the trial court's order relating to support and maintenance and remanded for further proceedings.

¶ 2  Petitioner, Mardi L. A., and respondent, Jamal A., were married in 2002 and had two children during the marriage, U.A. (a son, born October 2003) and S.A. (a daughter, born November 2006), and Jamal adopted two of petitioner's children from a prior marriage. (We note that U.A. is no longer a minor.) In July 2020, Mardi filed (1) a petition for dissolution of marriage and (2) a notice of intended relocation, explaining she had relocated to Utah in June 2020 due to safety concerns.

¶ 3  In June 2021, the trial court entered an order (1) allocating primary decision-making and the vast majority of parenting time to Mardi, (2) finding relocation of the

children to Utah was in the children's best interests, (3) deciding Jamal would be responsible for child support from the date of the petition's filing, and (4) denying maintenance to either party.

¶ 4    Jamal appeals, arguing the trial court's order was against the manifest weight of the evidence. Jamal contends (1) the court erred by considering improper factors when it permitted Mardi to relocate the children to Utah without notice, (2) the court's allocation of parenting time and decision making was improper because (a) Mardi took the children to Utah unilaterally and (b) he was the primary caregiver before the separation, and (3) the court improperly entered rulings concerning child support and maintenance despite the court having earlier ordered those issues reserved at the evidentiary hearing.

¶ 5    We agree only with Jamal's last argument. Accordingly, we vacate the trial court's judgment relating to support and maintenance and remand for further proceedings. We otherwise affirm the court's judgment.

¶ 6                                I. BACKGROUND

¶ 7                              A. Procedural History

¶ 8    In July 2020, Mardi A. filed a petition for dissolution of marriage. The petition alleged that, in June 2020, Mardi "fled for her safety to Davis County, Utah," but she had lived continuously in Illinois with Jamal for more than 90 days before she left. The petition further alleged the parties married in May 2002 and had two children during the marriage, U.A. (born October 2003) and S.A. (born November 2006). Because U.A. is no longer a minor, only S.A. is a subject of this appeal. (We note that Jamal adopted two of Mardi's children from a prior marriage, both of whom were over the age of majority at the time of the filing of the petition for dissolution.) The petition asserted Mardi was employed full-time as a human resource employee for "Army, Civilian Human Resource Agency NAF" and Jamal was a disabled veteran living in Rock Island,

Illinois. The petition alleged that no agreement existed regarding support, allocation of parental responsibilities, or maintenance.

¶ 9        On the same day Mardi filed the petition, she also filed a notice of intended relocation pursuant to section 609.2(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/609.2(c) (West 2018)), asserting (1) she intended to relocate with the minor children to Utah, (2) providing notice 60 days in advance was impracticable due to safety concerns, and (3) Mardi and the children were residing with Mardi's parents during the dissolution proceedings.

¶ 10        In August 2020, Jamal filed an answer to the petition, in which he admitted the parties did not have any agreement concerning the allocation of parental responsibilities. Jamal admitted Mardi had relocated to Utah with the children but denied it was necessary for her safety. Jamal further requested the children be returned to Rock Island because Mardi had relocated them without complying with the statutory requirements. Jamal requested the trial court to grant the petition for dissolution and award majority parenting time to him.

¶ 11        Also in August 2020, Jamal filed a "Motion for Immediate Return of Minor Children." Jamal argued that because Mardi unilaterally moved the children to Utah without first complying with section 609.2 of the Act, the trial court should order the children returned to Rock Island immediately.

¶ 12        Later in August 2020, Mardi filed a petition for temporary custody, maintenance, support, and attorney fees, in which she argued it was in the best interests of the children for Mardi to have temporary care, custody, and control of the children.

¶ 13        In September 2020, Mardi filed a response to Jamal's motion for immediate return of the minor children. In support of her response, Mardi attached her own affidavit, in which she

explained (1) why she relocated to Utah and (2) how the children's remaining in Utah would be in their best interests. Specifically, Mardi averred that in late June 2020, in the presence of one of her children, Jamal pushed her by the neck and threatened to kill her. Mardi said she was leaving and told the two minor children to come with her, but Jamal refused to let them leave. Mardi then left by herself and went to the police for help. The police escorted Mardi back to her home. While Mardi was gone, Jamal had the children pack bags. When Mardi returned with the police, Jamal permitted Mardi to enter the home to pack but refused to let the police into the home. After confirming with the police that she could leave with the children, Mardi and the children left and headed to Utah.

¶ 14     Mardi explained that the family had lived in Illinois for less than a year and she had no support system there. Mardi's family, immediate and extended, lived in Utah. The children did not have many friends in Illinois because school had switched to remote learning as a result of COVID-19. Mardi took the children to Utah, where she lived with her parents, who provided financial assistance and other support. Mardi explained that things had greatly improved for her family since they had moved to Utah. The children were doing better mentally and emotionally and connected frequently with family.

¶ 15     In her affidavit, Mardi also detailed Jamal's behavior toward her and the children. Mardi stated Jamal had anger problems, frequently belittled her and the children, and was prone to angry outbursts. At times, Jamal would throw or break items. He also insulted Mardi and the children. Mardi explained that Jamal's controlling behavior once caused her to seek help to relocate to a safehouse while the family was living in Germany.

¶ 16                         B. The Evidentiary Hearing

¶ 17     In September and October 2020, the trial court conducted hearings on Mardi's

motion for temporary custody and Jamal's motion for immediate return. At those hearings, Mardi, S.A., and U.A. testified (the record does not include a report of proceedings). The court continued the matters until a full trial could be conducted.

¶ 18        In April 2021, the trial court conducted an evidentiary hearing on the petition for dissolution. At the beginning of the hearing, Jamal moved to continue the hearing as to the issues of support and maintenance due to a recent change in his disability income. The court decided to "reserve" the issues of support and maintenance so they could be addressed at another time.

¶ 19        At the hearing, Mardi, Jamal, S.A., U.A., and an adult child (who was the children's half-sister) testified. The testimony was largely consistent with the statements from Mardi in her affidavit. Mardi testified that (1) her employer had permitted her to relocate to Utah, (2) she had found her own home to live in, and (3) the children were doing extremely well. The half-sister testified she lived with the parties until she was 18 and Jamal's parenting style was controlling and harsh, which led to a tense home environment predicated on fear and a lack of emotional support.

¶ 20        The trial court conducted *in camera* examinations of S.A. and U.A., who at the time were respectively 14 and 17 years old. Both children stated that they wished to remain in Utah and preferred not to have any contact with Jamal. The children explained that Jamal was controlling, emotionally abusive to Mardi, and caused a great deal of stress and anxiety for everyone. U.A. testified that he was glad Mardi had left and he had been asking her to leave for years before she eventually did. Both children stated that they had not spoken with Jamal, aside from a single text message, since they had relocated to Utah, a period of 10 months.

¶ 21        The trial court told the children that this was their opportunity to say anything they wanted the court to know before it made a decision. When the children expressed the desire to have no contact with Jamal, the court asked the children again to make sure they understood the

question. The court also asked for an explanation. The children reiterated that their lives were much better now that they had moved to Utah and stopped speaking with Jamal. In particular, the children had far less stress and anxiety and were able to enjoy life and make plans for the future.

¶ 22 At the conclusion of the evidentiary hearing, the trial court reiterated that it was reserving the issues of support and maintenance. The court ordered the parties to submit written closing arguments as to the remaining issues and took the matter under advisement. The docket entry for the hearing likewise indicates that the court reserved the issues of support and maintenance.

¶ 23 C. The Trial Court's Findings

¶ 24 In June 2021, the trial court entered a written order granting the petition for dissolution in which it (1) granted Mardi sole decision-making authority and majority parenting time, (2) authorized Mardi's relocation to Utah with the children, and (3) ordered Jamal to pay support to Mardi.

¶ 25 1. *Significant Decision-Making Responsibilities*

¶ 26 Regarding decision making, the trial court noted that it considered the statutory factors listed in section 602.5 of the Act as they pertained to the children's best interests in determining allocation of parental responsibilities. As to those factors, the court found that (1) the children expressed a strong preference for Mardi, (2) the children had adjusted to living in Utah with extended family and had only been in Rock Island for one year, (3) the parents lacked the ability to cooperate in decision making and had a high level of conflict, and (4) the physical distance between Utah and Illinois made shared decision making impossible.

¶ 27 2. *Allocation of Parenting Time*

¶ 28 Regarding parenting time, the trial court noted that it had considered the statutory

factors listed in section 602.7 of the Act (750 ILCS 5/602.7 (West 2020)) relating to the allocation of parenting time and found that (1) the children expressed a strong interest in remaining with Mardi in Utah; (2) Mardi performed the proper caretaking functions for their well-being; (3) the minors' adult half-sister testified that Jamal had provided little emotional support to her over the years, which created a tense family dynamic; (4) the family was a military family who had only lived in Illinois for one year, during which time the children had not developed an extensive friend base or support system; (5) the children testified that living in Utah had significantly improved their mental health, including decreased fear of Jamal's parenting actions; (6) the presence of extended family in Utah versus the short time spent in Illinois favored Utah as the children's state of residence; (7) Jamal had difficulty maintaining a close relationship with his children due to his control issues and lack of emotional support; and (8) communication between Jamal and the family was almost nonexistent.

¶ 29　　　　　Based upon those findings, the trial court awarded Jamal custody of the children for four weeks every summer, two weeks in June and two weeks in August, and one week during the Christmas/winter break.

¶ 30　　　　　　　　　　　　　　3. *Relocation*

¶ 31　　　　　Regarding relocation, the trial court noted that it considered section 609.2 of the Act and found that Mardi left Illinois with the children in June 2020, before any court action had begun. The court noted, "At the time of relocation of the minor children from Illinois to Utah, there was no legal proceeding regarding custody of the children." Although Mardi did not provide written notice to Jamal at least 60 days before relocation, the court found that "at the time of the relocation there was no parenting plan or allocation judgment entered with this court or any other court. So therefore the petitioner was not in violation of any order."

¶ 32　　　　　The trial court found that the relocation of the children was "in conjunction with the filing of the Petition for Dissolution of Marriage" and noted, "[t]he filing of the divorce seeking judicial approval of the relocation must establish by a preponderance of the evidence that the relocation is in the child(ren)'s best interest. *In Re: Marriage of Kavchak*, 2018 IL App. 2d 170853, 65." The court found that, having reviewed the statutory factors in section 609.2, it was in the children's best interests that Mardi be allowed to relocate them to Utah.

¶ 33　　　　　　　　　　　　　4. *Support and Maintenance*

¶ 34　　　　　The trial court "ordered [Jamal] to pay child support consistent with Illinois statutory guidelines" retroactive to the filing of the petition for dissolution and for the parties to resolve the matter by agreement. If the parties could not agree, "then the court shall reserve child support." The parties were required to split medical expenses. The court did not award maintenance to either party because they could support themselves. The court also divided the marital property and assets, which is not at issue in this appeal.

¶ 35　　　　　Thereafter, Jamal filed a motion to reconsider, asserting several errors, which the trial court granted in part. However, the court declined to modify its findings regarding (1) relocation, (2) parenting time and decision making, and (3) support and maintenance.

¶ 36　　　　　This appeal followed.

¶ 37　　　　　　　　　　　　　D. Illinois Supreme Court Rule 311

¶ 38　　　　　Jamal filed a notice of appeal in January 2022; however, the notice of appeal did not have a caption pursuant to Illinois Supreme Court Rule 311(a)(1) (eff. July 1, 2018) (requiring the notice of appeal to be captioned: "This Appeal Involves A Matter Subject to Expedited Disposition Under Rule 311(a)"). In February 2022, the case was dismissed because Jamal failed to file a docketing statement. In March 2022, Jamal filed a motion to vacate the dismissal, which

was granted later that same month. Later in March 2022, Jamal filed a docketing statement that contained a heading indicating the "appeal involve[d] a question of child custody [and] allocation of parental responsibilities." However, the appeal was not docketed by this court as an expedited appeal. Due to resulting delays, the case was not submitted for disposition until after the 150-day deadline.

¶ 39                                    II. ANALYSIS

¶ 40        Jamal appeals, arguing the trial court's order was against the manifest weight of the evidence. Jamal contends (1) the court erred by considering improper factors when it permitted Mardi to relocate the children to Utah without notice, (2) the court's allocation of parenting time and decision making was improper because (a) Mardi took the children to Utah unilaterally and (b) he was the primary caregiver before the separation, and (3) the court improperly entered rulings concerning child support and maintenance despite the court having earlier ordered those issues reserved at the evidentiary hearing.

¶ 41        We agree only with Jamal's last argument. Accordingly, we vacate the trial court's judgment relating to support and maintenance and remand for further proceedings. We otherwise affirm the court's judgment.

¶ 42                                    A. Relocation

¶ 43                                1 *The Applicable Law*

¶ 44        Section 609.2(b)-(d) of the Act provides that a parent with equal or majority parenting time may seek to relocate with a child and "must provide at least 60 days' written notice before the relocation unless such notice is impracticable." 750 ILCS 5/609.2(b)-(d) (West 2020). Subsection (g) provides that "[t]he court shall modify the parenting plan or allocation judgment in accordance with the child's best interests," and it provides a list of 11 nonexhaustive factors that

the court must consider. *Id.* § 609.2(g). The Illinois Supreme Court "has explained that a best interests determination 'cannot be reduced to a simple bright-line test' and that a ruling on the best interests of a child 'must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case.' " *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32, 129 N.E.3d 1230 (quoting *In re Marriage of Eckert*, 119 Ill. 2d 316, 326 (1988)). A trial court's best-interests determination will not be reversed unless it is against the manifest weight of the evidence. *Fatkin*, 2019 IL 123602, ¶ 32.

¶ 45                                         2. *This Case*

¶ 46            In its order, the trial court noted that because the parties did not have a "parenting plan or allocation judgment," Mardi "was not in violation of any order" when she moved to Utah without notice. The court wrote that it reviewed the best interest factors in section 609.2 and concluded that it was in the children's best interests to relocate with Mardi to Utah.

¶ 47            Jamal argues the trial court improperly considered conditions that existed after Mardi relocated instead of considering the conditions at the time the relocation was sought. Jamal also argues that permitting a parent to relocate without notice to the other parent is contrary to the purposes of the relocation statute and against public policy.

¶ 48            We conclude that the trial court properly found relocation to Utah was in the children's best interests. Nothing in section 609.2(g) required the court to limit its consideration to only the time period prior to relocation. See 750 ILCS 5/609.2(g)(11) (West 2020) (noting "any other relevant factors bearing on the child's best interests"). Moreover, the children's testimony about their *current* living situation was necessarily indicative and reflective of their lives *before* they moved and were still with respondent in Illinois. Given that the children spoke about how their lives had changed, the court was free to consider this testimony as evidence of the contrasting

- 10 -

home life with Jamal. However, even if we were to agree with Jamal and examined only the status of the family prior to relocation, the evidence in the record supports the court's conclusion that relocation was proper.

¶ 49　　　　Here, the record reflects that the trial court paid careful attention to the testimony of the parties and its *in camera* interviews with the children. The record also demonstrates that the children did not feel comfortable or secure when they lived with Jamal. They described an atmosphere that was tense, stressful, and occasionally hostile. The depth of the impact of living with Jamal was demonstrated by how the children felt after they had moved to Utah. The children felt better, could relax, and could make plans for the future. The children were doing well in school. Mardi's extended family lived in Utah and were able to provide financial, emotional, and practical support. By contrast, neither Jamal nor Mardi had family or friends in Illinois, and they had lived there for only a year. Accordingly, we conclude the court's finding that relocation was in the children's best interests was supported by the evidence.

¶ 50　　　　Given our conclusion, we need not decide whether the relocation statute was inapplicable because the parties did not have an allocation judgment, as the trial court found. Nor do we make any suggestion about when a parent may relocate with little or no notice. Contrary to Jamal's concerns, our review is limited to the specific facts of this case. See *Fatkin*, 2019 IL 123602, ¶ 32. Because the trial court appropriately considered (1) Mardi's failure to give notice and (2) the best interest factors in section 609.2, we affirm its judgment permitting relocation.

¶ 51　　　　　　　　B. Allocation of Parenting Time and Decision Making

¶ 52　　　　　　　　　　　1. *The Applicable Law*

¶ 53　　　　Sections 602.5(e) and 602.7(b) of the Act provide a list of factors for courts to consider when determining the best interests of the child. 750 ILCS 5/602.5(e), 602.7(b) (West

2020). Determining the allocation of parenting time and decision-making requires the trial court to consider the credibility of the testimony, weigh the evidence, and exercise its discretion to determine the best interests of the child. See *In re Custody of Sussenbach*, 108 Ill. 2d 489, 498-99, 485 N.E.2d 367, 370-71 (1985) ("[T]he trial court is in the best position to judge the credibility of the witnesses and determine the needs of the child."). "In child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child." *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 64, 92 N.E.3d 1070. Accordingly, a reviewing court will not disturb a trial court's order allocating decision-making responsibilities or parenting time unless the court's findings are against the manifest weight of the evidence. *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 47, 165 N.E.3d 501; *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24, 80 N.E.3d 636.

¶ 54        "Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings." *G.L.* 2017 IL App (1st) 163171, ¶ 24; see also *Jameson*, 2020 IL App (3d) 200048, ¶ 47 ("A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence."). "It is well settled that a reviewing court's function is not to reweigh the evidence or assess witness credibility and set aside the circuit court's decision simply because a different conclusion may have been drawn from the evidence." *Jameson*, 2020 IL App (3d) 200048, ¶ 51.

¶ 55                                        2. *This Case*

¶ 56        Because the trial court's analysis for its allocation of decision making and parenting time is set forth in detail in the background of this order (*supra* ¶¶ 26-29) and was largely the same

as its analysis under section 602.9, we need not repeat it here. We add that the court's conclusion that decision making could not be shared was well supported by the testimony of the children and Mardi that her relationship with Jamal was fraught, in part because of the differences in how they parented the children. Similarly, the evidence supported the court's finding that Jamal had trouble facilitating a relationship between the children and Mardi. Jamal admitted to insulting and criticizing Mardi in front of the children and that he made next to no efforts to communicate with the children since they left.

¶ 57      Regarding parenting time, the trial court's decision to severely restrict Jamal's parenting time was based on (1) the practical realities of where the parties lived and (2) the explicit testimony of the children, emphatically expressing a desire to never see or speak with Jamal. The children were old enough to make informed opinions about what was best for them, and the court gave those opinions appropriate deference. The court recognized the unique circumstances of this family and made a well-reasoned decision in what it considered to be in the children's best interests.

¶ 58      Accordingly, we affirm the trial court's findings regarding allocation of parental decision making and parenting time.

¶ 59                    C. Support and Maintenance

¶ 60      Last, Jamal argues the trial court erred by making determinations about maintenance and child support after it had explicitly reserved those issues at the evidentiary hearing. We agree.

¶ 61      The record demonstrates that the trial court orally ruled on multiple occasions during the evidentiary hearing that the issues of maintenance and support were reserved. Additionally, the court issued a written docket entry stating that it was not issuing a decision on

those issues because they had been reserved. Neither Jamal nor Mardi submitted any evidence on the issues of support and maintenance following the evidentiary hearing. Accordingly, the court erred by deciding those issues without permitting the parties the opportunity to present evidence and argument first. We vacate that portion of the trial court's judgment and remand the case for further proceedings.

¶ 62                                    III. CONCLUSION

¶ 63            For the reasons stated, we affirm the trial court's judgment regarding relocation, parenting time, and decision making. We vacate the trial court's rulings on child support and maintenance and remand for further proceedings consistent with this order.

¶ 64            Affirmed in part and vacated in part; cause remanded.

¶ 65